IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

_____

EARL RAYNOR,                                          :
        Plaintiff                                  :
                                :          CIVIL ACTION
           v.                                   :
                                :
CITY OF PHILADELPHIA,                                 :
        &amp;                                       :
CONTROLLER REBECCA RHYNHART,                          :
        &amp;                                       :
DEPUTY CITY SOLICITOR JON MICHAEL OLSON,              :
        &amp;                                       :
DIVISIONAL CITY SOLICITOR MARISSA O'CONNELL,          :
                      Defendants              :

<u>COMPLAINT</u>

PRELIMINARY STATEMENT

1.      This is a civil rights complaint brought under 42 U.S.C. Section 1983 seeking

compensatory and punitive damages for the violation of the constitutional guarantees

of equal protection and due process against the Defendants, Philadelphia City Controller

Rebecca Rhynhart, Deputy City Solicitor Jon Michael Olson of the Philadelphia Tax Unit,

and Philadelphia Divisional City Solicitor Marissa O'Connell, also of the Philadelphia Tax

Unit, for unlawfully withholding proceeds of court appointed counsel fees owed to the

Plaintiff, Earl Raynor, Esquire, in violation of the City of Philadelphia's contractual

obligations, without notice or an opportunity to be heard, on account of racial animus

and bias.

      This Complaint also raises supplemental state claims, including promissory

estoppel, breach of contract, fraudulent misrepresentation, negligent

misrepresentation, conversion, and intentional infliction of emotional distress, arising

out of the misrepresentation of Defendant Olson that the tax hold against Plaintiff's

vendor account would be lifted, resulting in the ensuing release of Plaintiff's counsel

fees, in exchange for Plaintiff satisfying his obligation under his contractual agreement

with the City of Philadelphia, by making a lump sum payment of $3,200.00.  Despite

tendering in full the consideration bargained for by Defendant Olson in exchange for the

release of Plaintiff's counsel fees, Defendants have refused to release the funds owed to

Plaintiff.   The conduct of Defendant Olson also violates the Pennsylvania Human

Relations Act, where it was undertaken with racial animus and bias.

    The actions and conduct of Deputy Solicitor Jon Michael Olson are the result of a

policy, practice, custom and deliberate indifference on the part of the Defendants City

of Philadelphia and Divisional City Solicitor Marissa O'Connell, as well as the policies

promulgated by Philadelphia City Controller Rebecca Rhynhart.

## JURISDICTION

2. This Court has jurisdiction over the subject matter of the Complaint under 42 U.S.C.

Section 1983 and 28 U.S.C. Section 1331, 1343(a)(3), 1343(a)(4) and 1367(a).

## PARTIES

3. The Plaintiff, Earl Raynor, Esquire, is and was at all times relevant this Complaint,

beginning in 1993, an attorney appointed by the Court of Common Pleas of Philadelphia

to represent indigent criminal defendants.

4.  The Defendant, City of Philadelphia, is a municipality in the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the City of Philadelphia Tax Unit.

5.  The Defendant, Rebecca Rhynhart, is and was at all times relevant to the Complaint a resident of Philadelphia, Pennsylvania and was acting in her capacity as the City Controller of Philadelphia under color of state law.  She is sued in her individual and official capacity, as the City Controller of Philadelphia, Pennsylvania.

6.  The Defendant, Deputy Solicitor, Jon Michael Olson, is and was at all times relevant to this Complaint, a resident of Philadelphia, Pennsylvania and was acting in his capacity as a Deputy Solicitor with the Tax Unit of the City of Philadelphia Law Department, under color of state law.  He is sued in his individual and official capacity.

7.  The Defendant, Divisional Deputy Solicitor, Marissa O'Connell, is and was at all times relevant to this Complaint, a resident of Philadelphia, Pennsylvania and was acting in her capacity as Divisional Solicitor with the Tax Unit of  the City of Philadelphia Law Department, under color of state law.  She is sued in her individual and official capacity.

8.  Defendant City of Philadelphia is under a duty and responsibility to run its Revenue Department in a lawful manner, so as to preserve for its citizens the rights, privileges and immunities guaranteed and secured to them by the Constitution and laws of the United States, the Commonwealth of Pennsylvania, and the City of Philadelphia.

9.  The City of Philadelphia delegated to the Defendants, City Controller Rebecca Rhynhart and City of Philadelphia Tax Unit Divisional Solicitor Marissa O'Connell, the responsibility

for establishing the implementation of policies, the practices, procedures, or customs

used by attorneys with the Tax Unit of the City of Philadelphia Law Department,

including the Defendant Deputy Solicitior Jon Michael Olson.

10. Each and all of the acts of the individual Defendants involved in this case were

performed under the color and pretense of the Constitution, statutes, ordinances,

regulations, customs and uses of the United States of America, Commonwealth of

Pennsylvania, and City of Philadelphia, were under the color of law and by virtue of their

employment with the City of Philadelphia's Controller's Office, as well as the Tax Unit of

the Philadelphia Law Department.

## FACTUAL ALLEGATIONS

11. Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs one through ten.

12. The Plaintiff, Earl Raynor, Esquire, has been an attorney appointed by the Court of

Common Pleas of Philadelphia to represent indigent clients on a continuing basis since

1993.

13. At the conclusion of each court appointed case, Plaintiff submits a fee petition voucher,

signed by the presiding judge, which is then filed with the Philadelphia counsel fee unit,

to obtain compensation

14. Payment of counsel fees for court appointed cases by the City of Philadelphia are

supposed to be provided within 30 days of the filing of signed vouchers with the

Philadelphia Counsel Fee Unit.

-4-

15. However, often because of fiscal restraints, stemming from budgetary shortfalls, payments are delayed for many months causing financial hardships on court appointed counsel.

16. Due to such delays in the payment of counsel fees, Plaintiff became delinquent in the payment of annual  business privilege and net profit taxes.

17.  As a result of Plaintiff's delinquency, On April 16, 2015, the Plaintiff, Earl Raynor, Esquire and the Defendant, City of Philadelphia, entered into a stipulated judgment wherein Plaintiff agreed to pay the settlement amount of $16,665.92, in exchange for the consideration of the City of Philadelphia not entering the stipulated judgment as matter of record, provided that on May 1, 2015, Plaintiff make a down payment of $500.00, followed by forty-eight (48) consecutive monthly payments of $336.79.

18.  In 2018, Plaintiff unfortunately breached the agreement, due to a continuation of the delays in voucher payments, due to the fiscal restraints faced by the City of Philadelphia, resulting in the City of Philadelphia imposing a tax hold on Plaintiff's vendor account, wherein all payments to Plaintiff for court appointed counsel fees were withheld.

19. On April 12, 2018, Plaintiff filed a Petition to Open the April 16, 2015 Stipulated Judgment, as part of an effort to get the tax hold lifted from his vendor account.

20. On August 13, 2018, Plaintiff agreed to withdraw the Petition to Open the April 16, 2015 stipulated judgment, in exchange for an agreement, that Plaintiff would make a lump sum payment and resume monthly tax payments.

21. Following the payment of several thousand dollars, as of the filing of this Complaint Plaintiff does not recall precisely the amount of the lump sum agreement, in December, 2018 or January, 2019, and an agreement to pay $325.00 per month, the City of Philadelphia agreed to lift the tax hold.

22. Following the signing of the new agreement, Plaintiff made regular payments of $325.00 every month, until the Court of Common Pleas of Philadelphia was shut down by the COVID-19 pandemic on March 17, 2020.

23. As a result of the COVID-19 pandemic the Philadelphia Courts remained shutdown for the rest of the year well into 2021.

24. As a result of the shutdown of the Court of Common Pleas, Plaintiff had no income from his practice in Philadelphia and was therefore, unable to make payments toward his payment agreement with the City of Philadelphia, resulting in an involuntary breach of the 2018 payment agreement.

25. In October, 2021, Plaintiff entered into an agreement with the Defendant, Deputy Solicitor, who was the attorney that negotiated the 2018 agreement, that he would make a payment of $1,600.00 on or before October, 2018 to reactive the agreement.

26. Unfortunately, the undersigned counsel was not able to come up with the $1600.00 payment until November, 2021.

27. When the Plaintiff contacted Defendant Olson to make the payment, Defendant Olson informed Plaintiff that it was too late, and that he would not accept the payment.

28. As a result of Plaintiff's failure to make a timely payment, the City of Philadelphia lodged a tax hold against his vendor account, which blocked all of Plaintiff's payments for court appointed counsel fees by the City of Philadelphia.

29. After not receiving payments from the City for several months, Plaintiff contacted Defendant, Deputy Solicitor Olson to resolve his tax debt.

30. On February 14, 2022, through an email correspondence,  Defendant SolicitOlson asked Plaintiff if he could make a lump sum payment of $3,300.00, because he believed that was all that was remaining on his agreement.

31. In an email correspondence, also on February 14, 2022, Plaintiff replied that the City could simply deduct the $3,300.00 from the court appointed counsel fees that were being withheld by the Defendant City of Philadelphia on the tax hold levied against Plaintiff's vendor account.

32. Defendant Olson replied in an email correspondence on February 14, 2022, that he wasn't sure that he could do that, but would get back to Plaintiff.

33.  Plaintiff immediately responded in an email correspondence, that if the City could not simply offset the amount owed from his vendor account, would it be possible for the City to withdraw the tax hold so that Plaintiff could make satisfy the outstanding balance with an immediate payment.

34. Plaintiff also indicated in the email that he would try and borrow the money.

35. Defendant Solicitor Olson also requested by oral communication that Plaintiff file his delinquent business privilege and net profits taxes for 2018 and 2019.

36. Plaintiff immediately emailed Defendant Solictor Olson the requested tax filings on February 14, 2022.

37. After the outstanding taxes were filed by Plaintiff, Defendant Solicitor Olson sent Plaintiff an email on February 24, 2022, stating that all that Plaintiff needed to do to get the tax hold lifted was make a payment of $3,126.00 and "that would take care of everything."

38. The following week Plaintiff hand delivered a Citizens Bank certified check in the amount of $3126.00 to the City of Philadelphia Tax Unit, located on the Fifth Floor of the Philadelphia Municipal Services Building at 1401 JFK Boulevard, Philadelphia, PA 19102.

39. Despite payment of the outstanding balance on Plaintiff's tax agreement with the City of Philadelphia, and the filing of delinquent taxes as requested by Defendant Solicitor Olson, he did not see to it that the tax hold on Plaintiff's vendor account was lifted, as a result Plaintiff's court appointed counsel fees remain withheld by the City of Philadelphia.

40. Plaintiff made numerous calls to Defendant Olson's Philadelphia Law Department office phone number, (215)686-0522, to inquire about why the tax hold had not been lifted but received no response for months.

41. Finally, sometime in April, 2022, Plaintiff was able to reach Defendant Divisional Solicitor Marissa O'Connell of the Philadelphia Tax Unit, who informed Plaintiff that Defendant Solicitor Olson was no longer with the office.

42.  Defendant Divisional Solicitor Olson also informed Plaintiff that no action had been taken on lifting the tax hold against Plaintiff's vendor account because her office was unaware of any agreement between Defendant Solicitor Olson and Plaintiff.

43. Dismayed by Defendant Divisional Solicitor Olson's declaration that to her knowledge there was no agreement between Defendant Solicitor Olson and himself, Plaintiff sent Defendant Divisional Solicitor O'Connell the email chain between himself and Defendant Solicitor Olson.

44. After reviewing the emails between Plaintiff and Defendant Solicitor Olson, Defendant Divisional Solicitor O'Connell asked Plaintiff if he had filed his business privilege and net profits tax returns.

45. Plaintiff informed Defendant Divisional Solicitor O'Connell that he had indeed filed his 2018 and 2019 business privilege and net profit taxes in two months earlier, on February 14th.

46. Defendant Divisional Solicitor O'Connell then asked why Plaintiff did not file city taxes for 2020.

47. Plaintiff replied that due to the COVID-19 pandemic shutdown of the Philadelphia Court of Common Pleas in 2020, he did not generate enough income to make pay taxes in 2020.

48. Defendant Divisional Solicitor Olson informed Plaintiff that even though he did not receive significant income in 2020, he nevertheless had to file city tax returns.

-9-

49. Upon being informed by Defendant Divisional Solicitor O'Connell that he had to file his 2020 business privilege and vendor taxes, Plaintiff immediately sent Defendant Divisional Solicitor O'Connell the requested city tax filings via email on April 13, 2022.

50. After receiving Plaintiff's city tax filings for2020, Defendant Divisional Solicitor O'Connell informed Plaintiff that his 2018 and 2019 city tax returns were in error, because he did not list his gross receipts.

51. Plaintiff immediately emailed a copy of the corrected 2018 and 2019 business privilege and net profits taxes, with the requested gross receipts information, however revised filings did not in any way change the amount owed by Plaintiff in his original filed city tax returns, because Plaintiff's income was under $100,000.00.

52. Despite receiving the corrected 2018 and 2019 returns, and 2020 city tax filings, the City of Philadelphia still refuses to lift the tax hold against Plaintiff's vendor account and continues to withhold Plaintiff's court appointed counsel fees.

53. Plaintiff did not receive an opportunity to being heard, prior to Defendant City of Philadelphia levying the tax hold against his vendor account.

54. The tax hold levied by the City of Philadelphia against Plaintiff, an African-American attorney, appointed to represent indigent criminal defendant by the Court of Common Pleas of Philadelphia,  is motivated by racial bias and animus, and is adverse action which is not levied against similarly situated white court appointed counsel counsel that are delinquent in their tax obligations.

-10-

55. At all times relevant to this Complaint, the conduct of Defendant Solicitor Olson, in misrepresenting to Plaintiff that the tax hold levied against his vendor account would be lifted with a payment of$3, 216.00 and the filing of delinquent tax returns, was in willful, reckless and callous disregard of Plaintiff's rights under federal and state law.

56. The deliberate indifference displayed by Defendant Solicitor Olson in violating Defendant's constitutional rights to due process, and to be free of racial discrimination, stemmed from the failure of Defendant Divisional Solicitor O'Connell, as the principle policymaker and implementer and practices, procedures and customs of the Tax Unit of the Philadelphia Law Department, to provide adequate supervision and training of Assistant City Solicitors so that they could honestly and fairly discharge their dutiesas tax compliance attorneys with the City of Philadelphia Department of Revenue.

57.  The deliberate indifference displayed by Defendant Controller Rebecca Rhynhart in levying a tax hold against Plaintiff's vendor account without affording Plaintiff an opportunity to be heard, stemmed from Defendant Controller Rhynhart's failure as a principle policymaker and implementer of practices, procedures, and customs used by the City of Philadelphia Office of the Controller.

58. As a direct and proximate result of the conduct of all defendants, Plaintiff suffered substantial damages, including psychological harm, some or all of which may be permanent.

## CAUSES OF ACTION

## COUNT I

**(Civil Rights Action (42 U.S.C. Section 1983) Racial Discrimination in Violation of the**

**Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. Section 1981**

**against Defendants Deputy Solicitor Olson, Divisional Solicitor O'Connell and**

**Controller Rhynhart)**

59. Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs 1-58.

60. **42 U.S.C. Section 1983** provides that:

> Every person, who under color of any statute, ordinance, regulation , custom or
> usage of any state or territory or the District of Columbia subjects or causes to be
> subjected any citizenof the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges or immunities secured by the
> constitution and law shall be liable to the party injured in an action at law, suit in
> equity, or other appropriate proceeding for redress . . . . .

61. Plaintiff in this action is a citizen of the United States and all of the individual

Defendants to this claim are persons for purposes of 42 U.S.C. Section 1983.

62. Defendants Deputy Solicitor Olson and Divisional Solicitor O'Connell, at all times

relevant hereto, were acting under color of state law in their capacities as Philadelphia

Assistant City Solicitors with the Tax Unit of the Philadelphia Law Department.

63. Defendant Controller Rhynhart, at all times relevant hereto, was acting under color of

state law in her capacity as the Controller for the City of Philadelphia.

64. At the time of the complained of events, Plaintiff had the clearly established

constitutional right to be free from racial discrimination in the administration of his City

Taxes by Defendants, Deputy Solicitor Olson and Divisional Solicitor O'Connell, and the handling of his court appointed counsel fees by Defendant Controller Rhynhart. And to enjoy the equal protection of the laws.

65. Title 42 U.S.C. Section 1981 ("Section 1981") provides in pertinent part"

   (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws, and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, and licenses, and exactions of every kind, and to no other.

66. Plaintiff, as African-American is a member of a protected class, and thus also had the clearly established statutory right under this provision of 42 U.S.C. Section 1981 to be free from racially motivated unlawful takings without due process of law as well as unethical breaches of contractual obligations and nefarious tortious misconduct.

67. Plaintiff's race was clearly a motivational factor in Defendant Solicitor Olson informing Plaintiff that his court appointed counsel fees that were withheld by the City could not be applied to pay his outstanding tax debt with the City of Philadelphia.

68. Similarly situated white court appointed attorneys are permitted to apply their court appointed fees directly to satisfy their tax obligations.

69. Plaintiff's race was also clearly a motivating factor in Defendant Solicitor Olson making a false promise that the tax hold against Plaintiff's vendor account would be lifted and

Plaintiff's court appointed counsel fees would be released, in exchange for an upfront lump sum payment which the City would deem as full satisfaction of Plaintiff's obligation under his tax agreement.

70. Defendant Olson and other City Solicitors with the Tax Unit of the Philadelphia Law Department do not make such intentional misrepresentations to similarly situated white court appointed attorneys.

71. Finally, Plaintiff's race is a motivating factor for the tax hold levies against his vendor account, where Controller Olson does not place tax holds against the vendor accounts of similarly situated white court appointed counsel that are delinquent on their city tax obligations.

72. Defendants' conduct was undertaken with the purpose of depriving Plaintiff of the equal protection and benefits of the law, equal privileges and immunites under the law, and due process in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. 1981.

73. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected rights.

74. The acts or omissions of all individual Defendants were moving forces behind Plaintiff's injuries.

75. These individual Defendants acted in concert and joint action with each other.

-14-

76. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

77. The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy decision ordinance, regulation, widespread habit, usage, or practices in their actions pertaining to Plaintiff.

78. As a proximate result of Defendants' unlawful conduct Plaintiff has suffered emotional injuries and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

79. IN addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. Section 1983,in that actions of Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**COUNT II**

**( Civil Rights Action (42 U.S.C. Section 1983)  Unlawful Taking in Violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution)**

80. Plaintiff re-alleges and incorporates by reference allegations contained in paragraphs one 1-79.

81. **42 U.S.C. Section 1983** provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to the be subjected, any citizens of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution

-15-

and laws, suit in equity, or other proper proceeding for redress . . . . .

**42 U.S.C. Section 1983**.

82. Defendant Controller Rhynhat, at all times relevant hereto, was acting under color of state law in their capacity as employees of the City government of Philadelphia., and their acts or omissions were conducted within the scope of their official duties or employment.

### A. Procedural Due Process

83. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." To establish a cause of action for a violation of procedural due process, Plaintiff must prove that a person acting under color of state law deprived him of a protected interest and that the state procedure for challenging the deprivation does not satisfy the requirements for procedural due process. **Homan v. City of Reading, 15 F.Supp. 2d 696, 699 (E.D. Pa. 1988)**.

84. A property interest protected by the due process clause results from a "legitimate claim of entitlement created by an independent source such as state law." **Id.**

85. If such a property interest is deprived, due process requires notice and a meaningful opportunity to be heard. **Id.**

86. Clearly, Plaintiff has a legitimate claim of entitlement to his court appointed counsel fees, where the fees were ordered by the presiding Court of Common Pleas Judges of Plaintiff's court appointed cases.

-16-

87. Plaintiff has been deprived of such legitimate interest by the Defendant Controller Rhynhart.

88. Plaintiff was not afforded notice and a meaningful opportunity to be heard, prior to the tax hold being levied by Defendant Controller Rhynhart.

89. Defendant Controller Rhynhart's seizure of Plaintiff's legitimate property interest in his court appointed counsel fees without being afforded notice an opportunity to be heard violated Defendant's right to procedural due process under the Due Process Clause of the Fourteenth Amendment.

### *B.* **Substantive Due Process**

90. "Substantive due process refers to and protects federal rights." **Nicholas v. Pennsylvania State University, 227 F.3d 133, 141 (3d Cir 2000).**

91. To prevail on his substantive due process claim, Plaintiff must first establish that he has "a protected interest to which the Fourteenth Amendment's due process protection applies." **Id. at 139 (citations omitted)**.

92. Although it is settled that state-created property interest, including some contract rights are entitled to protection under procedural due process, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." **Id.**

93. Accordingly, to state a substantive due process claim, a plaintiff must have been deprived of "a particular quality of property interest." **Id.**

94. [W]hether a certain property interest embodies this particular quality . . . . depends on whether that interest is fundamental under the United State Constitution." **Id. (internal quotations and citations omitted)**.

95. Plaintiff's court appointed counsel fees, which were withheld in violation of procedural due process under the Fourteenth Amendment, is clearly a property interest which is fundamental to the United States Constitution, where the United States Supreme Court established in the landmark ruling of **Gideon v. Wainright, 372 U.S. 335**, that indigent criminal defendants have a fundamental right to counsel under the Sixth Amendment to the United States Constitution.

96. Therefore, clearly Defendant Controller Rhynhart's taking of Plaintiff's court appointed counsel fees without affording Plaintiff notice and an opportunity to be heard violated Defendant's right to substantive due process.

97. The conduct of Defendant Controller Rhynhart described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

98. Defendant Controller Rhynhart at all times relevant hereto was acting pursuant to municipal/county custom, policy, ordinance, regulation, widespread habit, usage, or practice in her actions pertaining to Plaintiff.

99. As a proximate result of Defendant Controller Rhynhart's unlawful conduct Plaintiff has suffered emotional injuries and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

**COUNT III**

**(Civil Rights Action (42 U.S.C. Section 1983) Deliberately Indifferent Policies, Practices, customs, Training and Supervision in Violation of the Fourth and Fourteenth Amendment and in violation of 42 U.S.C. Section 1981 against Defendant Divisional Solicitor Marissa O'Connell)**

100.     Plaintiff re-alleges and incorporates by reference allegations contained paragraphs 1-99.

101.     42 U.S.C. Section 1983 provides that:

Every person, who under color of any statute ordinance, regulation, custom usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in action at law, suit in equity, or other appropriate proceeding for redress . . . . .

102.     Plaintiff in this action is a citizen of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. Section 1983.

103.     Plaintiff had the following clearly established rights at the time of the complained of conduct.

A.  The right to not be deprived of property without procedural and substantive due process under the Fourteenth Amendment to the United States Constitution.

-19-

B. The right to be free from discrimination by employees of the City of Philadelphia
under the Equal Protection Clause of the Fourteenth Amendment to the United
States Constitution and under 42 U.S.C. Section 1981.

104.      Defendants Controller Rhynhart, Divisional Solicitor O'Connell and the City of
Philadelphia all knew or should have known of these rights at time of their complained
of conduct as they were clearly established at that time.

105.      The acts and omissions of these Defendants, as described herein, deprived
Plaintiff of his constitutional and statutory rights and caused him other damages.

106.      Defendant Controller Rhynhart was at all times relevant the policymaker for the
City of Philadelphia Office for the Controller, and in that capacity established policies,
procedures, customs, and or practices for the same.

107.      Defendant Divisional Solicitor Marissa O'Connell  was at all times relevant the
policymaker for the Tax Unit of the Philadelphia Law Department, and the direct
Supervisor of the Defendant Solicitor Olson, and in that capacity established policies,
procedures, customs and/or practices for the same.

108.      Defendants Controller Rhynhart and Divisional Solicitor Marissa O'Connell
developed and maintained policies, procedures, customs, and or/practices exhibiting
deliberate indifference  to the constitutional rights of citizens, which were the moving
forces behind and proximately caused the violations of Plaintiff's constitutional and
federal rights as set forth herein and the in the other claims, resulted from a conscious
or deliberate choice to follow a course of action from among various alternatives.

-20-

109.    Defendants Controller Rhynhart and Divisional Solicitor Marissa O'Connell have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department wide customs law enforcement related policies, procedures, customs practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

110.    In light of the misconduct of Defendant Solicitor Olson in misrepresenting to Plaintiff that the tax hold against his vendor account would be lifted and his court appointed counsel fees released upon the payment of the outstanding balance of $3,216.00 on his vendor account, the inadequacy of Defendant Divisional Marissa O'Connell's training or supervision is obvious and evinces that Defendant O'Connell's supervision was deliberately indifferent to Plaintiff's rights against taking without due process, racial discrimination, as well as the ethical contractual breaches and tortious conduct of Defendant Olson.

111.    Defendant Divisional Solicitor O'Connell's deliberate indifference is further demonstrated by the fact that when she was wholly unaware of the agreement between Plaintiff O'Connell and Defendant Solicitior Olson before and after he left his position as a City Solicitor with the Tax Unit of the Philadelphia Law Department.

112.    Defendant Controller Rhynhart's policy of withholding the court appointed counsel fees of delinquent taxpayers, without affording the tax payers notice and an

opportunity to be heard clearly constitutes deliberate indifference to Defendant's

constitutional right against unlawful takings wherein Defendant is denied an notice and

an opportunity to be heard.

113.    The deliberately indifferent training and supervision provided by Defendants

Controller Rebecca Rhynhart, Divisional Solicitor Marissa O'Connell and the City of

Philadelphia resulted from a conscious or deliberate choice to follow a course of action

from among various alternatives available to the aforementioned Defendants and were

the moving forces in the constitutional and federal  violations and injuries complained of

by Plaintiff.

114.    As a direct and proximate of Defendants' unlawful conduct, Plaintiff has suffered

emotional injury and other damages and losses as described herein entitling him to

compensatory and special damages, in amounts to be determined at trial.

115.    Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42 U.S.C. Section

1983 to redress Defendants' above described ongoing deliberate indifference to policies,

practices, habits, customs, usages, training and supervision with respect to the rights

described herein, wherein Defendants have no intention for voluntarily correcting despite

obvious need and requests for such correction.

**COUNT IV**

**Breach of Contract by Defendants City of Philadelphia and Deputy Solicitor Jon Michael Olson**

116.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-115.

117.     Following the agreed upon dismissal of Plaintiff's Petition to Open Stipulated Judgment on August 13, 2018, Plaintiff and Defendant City of Philadelphia entered a contract in October, 2018, whereby Plaintiff agreeing to pay $325.00 per month, the City of Philadelphia would lift the tax hold against Plaintiff's vendor account, until Plaintiff's tax debt was satisfied.

118.     The agreement was negotiated on behalf of Defendant City of Philadelphia by Defendant Deputy Solicitor Jon Michael Olson.

119.     On February 24, 2022, Defendant Solicitor Olson sent Plaintiff an email stating that Plaintiff only owed $3,216.00 on the agreement, and that once that was paid that should take care of everything.

120.     Based on prior conversations with Defendant Solicitor Olson, Plaintiff inferred that "should take care of everything," meant that the agreement would be satisfied and that the tax hold that had been levied against Plaintiff's vendor account by the Philadelphia Tax Unit would be lifted and his court appointed counsel fees would be released forthwith.

121.    After borrowing $1,500.00 from his father, Plaintiff brought a cashier's check of $3,216.00 to the Philadelphia Tax Unit the following week.

122.    Despite paying the agreement in full, the tax hold remains to the date of filing of this complaint, April 25, 2022.

123.    Since making the $3,216.00 payment to the City of Philadelphia Tax Unit, Plaintiff has had no contact with Defendant Solicitor Olson, despite numerous pone calls to his office.

124.    It was not until April that Plaintiff learned that Defendant Solicitor Olson no longer works with the Tax Unit of the Philadelphia Law Department.

125.    As a result of the breach of the duty imposed by the contract to not interfere with the payment of Plaintiff's court appointed counsel fees as long as he was compliant with making the monthly $325.00 payments towards his tax debt with the City of Philadelphia, which at time have been satisfied in full, Plaintiff has suffered severe economic loss, which has made him delinquent in paying his rent and utilities, and even for daily  food and travel expenses.

126.    Plaintiff has also suffered severe emotional distress, which manifested itself in a job interview with the Queens New York Public Defender, during which Plaintiff broke down crying, and has all but lost any prospects of securing the position.

127.    Finally, the unwillingness of the City to pay Plaintiff has strained Plaintiff's relationship with his 92 year old father, who Plaintiff told that he would promptly repay the $1,500.00 loan once the tax hold against his vendor account was lifted.

128.     Defendant City of Philadelphia and Defendant Solicitor Olson's conduct in breaching the payment agreement is reckless and malicious conduct which entitles Plaintiff to compensatory damages, punitive damages, and such other relief as the Court may deem just and proper.

## COUNT V

### Defendant Deputy Solicitor Olson's Conduct is Actionable under

### Promissory Estoppel

129.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-128.

130.     Defendant Deputy Solicitor Olson's promise to that by making a payment to the City of Philadelphia Tax Unit of $3,216.00 "should take care of everything," clearly meaning that the tax hold on Plaintiff's vendor account would be lifted and his court appointed counsel fees that had been withheld by the Defendant City of Philadelphia, would be subsequently released, was promise that a reasonable person would expect would induce definite action, in this case a payment of $3,216.00 by Plaintiff.

131.     Defendant Deputy Solicitor Olson's promise did induce Plaintiff into making a payment of $3,216.00 to the City of Philadelphia Tax Unit.

132.     Clearly, the injustice of Defendant City of Philadelphia continuing to withhold Plaintiff's court appointed counsel fees can only be remedied by enforcing Defendant Deputy Solicitor Olson's promise to lift the tax hold once the $3,216.00 payment was made and the Plaintiff's tax agreement satisfied in full.

133.    Defendant Solicitor Olson's conduct in inducing Plaintiff to make a $3,216.00

payment, based on the false promise that this would result in the release of his court

appointed counsel fees by the City of Philadelphia, where Plaintiff communicated to

Defendant Solicitor Olson that he didn't have the money and would have to ask for a

loan from his family, was reckless and malicious conduct which entitles Plaintiff to

compensatory damages, punitive damages, and such other relief as the Court may deem

just and proper.

**COUNT VI**

**Fraudulent Misrepresentation by Defendant Deputy Solicitor Jon Michael Olson**

134.    Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs 1-132.

135.    Defendant Deputy Solicitor Olson's promise that if Plaintiff paid his outstanding

tax debt, under the 2018 tax agreement, the tax hold levied against his vendor account

would be lifted, resulting in the payment of his court appointed counsel fees, was a

patent misrepresentation, as Defendant City of Philadelphia maintains the tax hold on

Plaintiff's vendor account as of the filing date of this complaint, April 25, 2022, more

than two months after Plaintiff made the $3,216.00 payment to the City of Philadelphia

Tax Unit.

136.    Defendant Deputy Solicitor Olson's misrepresentation was fraudulently made

with the intention of inducing Plaintiff to make a lofty payment to the City of

Philadelphia Tax Unit.

137.    Plaintiff's reliance on Defendant Solicitor Olson's misrepresentation was

justifiable, since Defendant Solicitor Olson was a representative of the City of

Philadelphia Law Department, who Plaintiff had dealt with since the filing of Plaintiff's

Petition to Open Stipulated Judgment, four years earlier in 2018 and there had been no

other misrepresentations or nefarious conduct engaged in by Defendant Solicitor Olson

in the course of amicably resolving the petition to open judgment case and negotiating

the 2018 tax agreement.

138.    Defendant Solicitor Olson's fraudulent misrepresentation has dramatically

harmed Plaintiff's economic standing, as it caused Plaintiff to make an exorbitant

payment of $3,216.00 to the City of Philadelphia at a time in which Plaintiff is receiving

no compensation for court appointed criminal cases, which is the lion share of Plaintiff's

practice.

139.    Defendant Olson's reckless and malicious conduct in making the fraudulent

misrepresentation entitles Plaintiff to compensatory damages, punitive damages, and

such other relief as the Court may deem just and proper.

**COUNT VII**

**Negligent Misrepresentation by Defendant Deputy Solicitor Jon Michael Olson**

140.    Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs 1-139.

141.    Given the budgetary constraints imposed by the COVID-19 pandemic 18 month

shut down of the City of Philadelphia, including the Philadelphia Court of Common

-27-

Pleas,  Defendant Deputy Solicitor Olson should have known that the tax hold stemmed

in large measure from budgetary shortfalls, and that the City, therefore, would not be

inclined to pay Plaintiff anyway.

142.    Defendant Solicitor Olson's conduct in negligently representing to Plaintiff that

payment of the $3,216.00 outstanding tax debt balance would result in the lift of the tax

hold against his vendor account and subsequent payment by the City of Philadelphia of

his Counsel fees caused Plaintiff grievous economic and emotional injury.

143.    Defendant Solicitor Olson's negligent misrepresentation that Plaintiff's court

appointed counsel fees would be paid by the City of Philadelphia, upon Plaintiff

satisfying his outstanding tax debt was reckless conduct which entitles Plaintiff to

compensatory damages, punitive damages, and such other relief as the Court may deem

just and proper.

**COUNT VIII**

**Conversion by the Defendant City of Philadelphia**

144.    Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs 1-143.

145.    Despite numerous demands, the City of Philadelphia continues to refuse to lift

the tax hold against Plaintiff's vendor account pay him f his court appointed counsel

fees, which are in fact court ordered.

146.    There simply is no lawful justification for the Defendant City of Philadelphia to

deprive Plaintiff of his earned court appointed counsel fees, where according to

Defendant Solicitor Olson, Plaintiff has fully satisfied the terms of his 2018 taxpayer

agreement with the City of Philadelphia, and Plaintiff has made all required tax filings

with the City of Philadelphia.

147.    Defendant City of Philadelphia's conduct in unlawfully depriving Plaintiff of his

court appointed counsel fees constitutes reckless and malicious conduct which entitles

Plaintiff to compensatory damages, punitive damages, and other such relief as the Court

may deem just and proper.

**COUNT IX**

**The City of Philadelphia is Vicariously Liable for the Fraudulent and Negligent**

**Misrepresentation of Defendant Deputy Solicitor Jon Michael Olson**

148.    Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs 1-147.

149.    Defendant Deputy Solicitor Olson made his fraudulent and negligent

misrepresentation to Plaintiff that the Defendant City of Philadelphia would release the

tax hold against his vendor account and pay him his withheld court appointed counsel

fees, occurred within Defendant Solicitor Olson's employment with the City of

Philadelphia as a Solicitor with the City of Philadelphia Law Department.

150.    Therefore, the City of Philadelphia is vicariously liable to Plaintiff for the reckless

and malicious tortious misconduct of Defendant Solicitor Olson, which entitles Plaintiff

to compensatory damages, punitive damages, and other such relief as the Court may

deem just and proper.

**COUNT X**

**Intentional Infliction of Emotional Distress by Defendant Deputy Solicitor**

**Jon Michael Olson**

151.    Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs 1-150.

152.    By engaging in the acts herein alleged, i.e., fraudulently inducing Plaintiff to

make an exorbitant payment of $3,216.00, almost half of which he had to borrow, with

the false promise that the payment would result in release of his frozen court appointed

counsel fees with the City of Philadelphia, Defendant Solicitor Jon Michael Olson

engaged in outrageous conduct with an intent to or a reckless disregard of the

probability of causing Plaintiff to suffer emotional distress.

153.    Plaintiff has in fact suffered emotional distress which manifested itself in

Plaintiff's emotional breakdown during a job interview with the Queens,. New York

Public Defender on April 22, 2022.

154.    Therefore, as a direct, proximate and foreseeable result, Plaintiff has suffered

severe emotional distress and the outrageous conduct was the cause of the emotional

distress suffered by Plaintiff.

155.    The conduct of Defendant Solicitor Olson also amounts to oppression, fraud or

malice and punitive damages should be assessed against Defendants for the purpose of

punishment and for the sake of example.

-31-

**WHEREFORE,** Plaintiff respectfully requests

A.  Compensatory damages as to all Defendants;

B.  Punitive Damages as to Defendant Deputy Solicitor Jon Michael Olson and

Defendant City of Philadelphia;

C.  Reasonable attorney fees and costs as to all Defendants;

D.  Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.

Respectfully submitted:

 /s/ Earl Raynor_____
Ear Raynor, Esquire
PA Supreme Court I.D. No. 66849
1800 JFK Boulevard
Third Floor
Box 103
Philadelphia, PA 19103

Counsel for Plaintiff
Earl Raynor

-32-